Caitlin Kelly Henry, Esq. (SBN #287949)
1400 Broadway #200
Oakland, CA 94612
Telephone: (510)277-2025
Email: ckh@caitlinkellyhenry.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA LAW,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS,<br><br>    Defendant. | **DECLARATION OF CAITLIN KELLY HENRY** |

**DECLARATION OF CAITLIN KELLY HENRY**

I, Caitlin Kelly Henry, declare under penalty of perjury pursuant to 28 USC 1746 that the following statements are true and correct:

1. The following statements are made of my own personal knowledge except as to those matters stated to be based on information or belief. If I were to be called as a witness, I could competently testify about what I have written in this declaration.

2. The March 12, 2025 hearing discussed records that may have been produced in *California Coal. for Women Prisoners v. United States*, No. 4:23-CV-4155-YGR, (N.D. Cal.) (Herein "*CCWP*") *M.R. v. Federal Correctional Institution "FCI" Dublin* 4:22-cv-05137-YGR, (N.D. Cal.) (Herein "*M.R.*") that may be similar to records requested by Plaintiff Law. What follows is an analysis of the similarity of themes of in documents released pursuant to Plaintiff Law's Motion to Intervene *CCWP* and the themes in her request. These similarities do not indicate the actual release of the requested records, just that there are similarities in the content.

HENRY DECL.                                    1

3. During our November 15 and November 22, 2024, meet and confers, Opposing Counsel noted that BOP will argue that FOIA Exemptions 6 and 7(c) apply to requested records #3, #6, #20, and #43, and asked for authority on why the exemptions should not apply. In December 2024, in an effort to assist BOP with its duty to carry out an adequate search reasonably calculated to identify and produce all responsive, non-exempt agency records, Plaintiff provided 2 memorandums to Opposing Counsel to orient government attorneys and BOP staff to what responsive records may exist based on what was released in *CCWP*. Plaintiff's Counsel narrowed the scope of the request to exclude records that were already produced publicly. Together, the memorandums function as roadmaps to the universe of potentially responsive or producible documents and explain the when and why courts unsealed records analogous to those requested. The memorandums offered legal citations and insight into how to approach related requests.

4. The December 18, 2024 memorandum serves as a consolidated index and analysis of nearly 100 records Judge Gonzalez Rogers unsealed in *CCWP* response to journalist Victoria Law's motions. It details docket numbers (the *CCWP* case has duplicative and differing ECF numbers for some of the released records, so is challenging to navigate expediently), content summaries, and categorizes the types of issues covered, such as staff misconduct, medical care, transfers, and administrative investigations. It provides the reader, such as a government attorney or FOIA staff member newly stepping into the litigation, an immediate snapshot of what kinds of documents the BOP generated, how they were used in litigation, and why courts ordered them unsealed. The memorandum also draws direct links between these unsealed materials and FOIA exemptions 6 and 7(c), allowing the reader to anticipate where exemption arguments may fail in the future. By matching unsealed documents to specific FOIA request numbers, it gives the reader a shortcut to understanding what is likely releasable, and what precedent governs these types of records.

5. The December 2, 2025 memorandum breaks down why FOIA Exemptions 6 and 7(c) likely do not apply to the records at issue. For an attorney or FOIA staff member unfamiliar with the *CCWP* or *Law v. BOP* case history, this memorandum explains what records likely exist, what systems they come from, and why their disclosure matters. It provides the legal grounding, public interest context, and factual background necessary to understand how these records fit into the broader scrutiny of BOP practices and failures. It explains the legal standards governing those exemptions and applies them directly to the types of documents generated in the *CCWP* and *M.R.* cases, such as compassionate release files, medical review logs, and staff transfer assignments. It shows that the *CCWP* Court and

other courts rejected vague or speculative privacy arguments and emphasized the weighty public interest in records tied to sexual abuse, institutional misconduct, and government accountability. The memorandum provides citations to the *CCWP* court already rejected boilerplate arguments about privacy or ongoing investigations when the government failed to give specific, compelling justifications.

6. The Bureau of Prisons (BOP) has not provided Plaintiff with information about the specific records that exist, so Plaintiff is unable to determine the exact records related to each requested item.

7. After the March 12, 2025 hearing, I reviewed how closely the documents unsealed in the *CCWP* case align with the types of records requested in the FOIA. This review does not determine whether the unsealed documents are the exact records requested but rather offers a general overview of the kinds of materials involved. This breakdown specifically answers the question: "How many of the documents unsealed in CCWP are similar to those requested in Law's FOIA?" The analysis was limited to documents publicly unsealed in the *CCWP* case and did not include any filings that remain subject to the protective order or materials from the *M.R.* docket.

8. Based on the available records, 25 of the 50 items requested in *Law v. BOP* appear similar in theme or overlap with documents unsealed in CCWP. These include FOIA request item numbers: 1, 2, 3, 5, 6, 7, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 28, 31, 37, 43, and 50. The remaining 25 items did not appear to be similar to any documents currently unsealed in *CCWP*. These FOIA request item numbers: 4, 8, 9, 10, 15, 25, 27, 29, 30, 32, 33, 34, 35, 36, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, and 49. In meet and confers Plaintiff stated that she is not requesting records she already obtained through her motion to intervene in *CCWP* or *M.R.*, unless there are unredacted versions available. Meet and confers specifically discussed items 36. Special master report about conditions at Dublin, transfer, closure, conditions at new Facilities and 37. Audits (b. Dublin Task Force Report, b. Moss Group Report, c. PREA Related Audits and Reports). Other that those items already discussed by counsel, no items unsealed in *CCWP* provide a sufficient response to the request. Plaintiff cannot narrow the request further without information from BOP.

9. Despite parties conducting 20 meet and confers, and Plaintiff requesting information about the status of BOP's search each week, the information BOP has shared about the status of the searches is limited to that which is documented the attached Status Report Index (*See Ex. 3*) and what Plaintiff's counsel learned about at 1:30PM today when she received DOJ's position.

10. Plaintiff has narrowed the request and offers to narrow the request as a standing agenda item in each weekly meet and confer. Plaintiff could provide the Court with this agenda and notes if desired.

Plaintiff's ability to further narrow the request is only hindered by BOP's ongoing failure to communicate essential information, including what systems of records have been searched, what terms were used, and whether any responsive documents have been located. To date, meet-and-confers typically consist of government counsel reporting that there are "no updates" from BOP. This lack of information makes it procedurally impossible for Plaintiff to make informed decisions about narrowing the request, a fact Plaintiff has repeatedly raised.

/s/ *Caitlin Henry*

Caitlin Kelly Henry, Esq.
Attorney at Law

HENRY DECL.    4